UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL                     'O'

| Case No. | 2:15-cv-09942-CAS(FFMx) | Date | March 17, 2017 |
|---|---|---|---|
| Title | GEMCAP LENDING, LLC v. SCOTTSDALE INDEMNITY CO., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (IN CHAMBERS) - MOTION TO DISMISS (Dkt. 16, Filed February 9, 2016)

## I.    INTRODUCTION

On November 24, 2015, plaintiff GemCap Lending, LLC ("GemCap") brought this action against defendant Scottsdale Indemnity Company ("Scottsdale") in Los Angeles Superior Court. Dkt. 1. On December 29, 2015, Scottsdale removed the action to federal court, asserting diversity jurisdiction. Dkt. 1. On January 5, 2016, Scottsdale filed a motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 8. In response, GemCap filed the operative First Amended Complaint ("FAC") on January 26, 2016. Dkt. 14 (FAC). The FAC asserts claims for breach of contract, breach of the implied duty of good faith and fair dealing, and a judgment holder direct action under California Insurance Code section 11580, et seq.

On February 9, 2016, Scottsdale filed the instant motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 16 ("Motion"). On March 8, 2016, Gemcap filed an opposition to the instant motion. Dkt. 23 ("Opp'n"). On March 21, 2016, Scottsdale filed a reply. Dkt. 26 ("Reply"). On April 6, 2016, the Court vacated the hearing on the instant motion and took the matter under submission. Dkt. 28.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | 2:15-cv-09942-CAS(FFMx) | Date | March 17, 2017 |
|---|---|---|---|
| Title | GEMCAP LENDING, LLC v. SCOTTSDALE INDEMNITY CO., ET AL. | | |

## II. BACKGROUND

Plaintiff GemCap Lending, LLC is an asset-based commercial lender. FAC ¶ 6. Non-party CROP USA Insurance Agency, Inc. ("Crop") is a managing general insurance agency that sells insurance policies, primarily policies issued by Diversified Crop Insurance Services, Inc. ("Diversified"). According to the operative complaint, Crop's business "depended almost entirely on sales performed by Crop's agents and subagents," and in order to "maintain Crop's business, including its revenue stream, Crop's agents and subagents needed to be timely paid." Id. ¶ 12. However, in 2011, Crop experienced cash flow issues and therefore needed to obtain a loan. Id. GemCap accordingly met with Crop's principals to discuss a potential loan to fund its operations. Id. ¶ 15. During these meetings, Crop represented to GemCap it had cash flow issues due to the periodic nature of insurance commissions payments. Id. On November 23, 2011, GemCap and Crop executed a loan agreement for a $5 million revolving credit facility. Id. The credit limit was eventually raised to $10 million on February 4, 2013. Id. Throughout the term of the loan, GemCap alleges that Crop negligently misrepresented its financials as it made advances on the line of credit, in violation of the loan agreement. Id. On July 13, 2013, Crop defaulted on the loan with GemCap. Id. ¶ 16.

On July 30, 2013, GemCap initiated a lawsuit against Crop in the Central District of California arising from Crop's alleged breach of the loan agreement. Id. ¶ 16; see GemCap Lending I LLC v. Crop USA Ins. Agency, Inc., Case No. 13-cv-05504 (C.D. Cal) (hereafter, the "underlying action").[1] Crop was insured by Scottsdale Indemnity Company under a professional liability policy ("the Policy") covering the period at issue in the underlying action. Accordingly, Crop tendered the complaint in the underlying action to Scottsdale, seeking to invoke Scottsdale's purported duty to defend Crop under the Policy. FAC ¶ 17. On September 3, 2013, Scottsdale rejected Crop's request for a defense in the underlying action, and Crop accordingly bore the burden of its own defense in the underlying action. Id. ¶¶ 18-19.

---

[1] GemCap's initial complaint in the underlying case was filed on July 30, 2013. GemCap v. Crop, Dkt. 1. GemCap ultimately filed a second amended complaint in that action on December 31, 2013. Id., Dkt 102. The Court refers to these documents as "Underlying Compl." and "Underlying SAC," respectively.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-09942-CAS(FFMx) | Date | March 17, 2017 |
| Title | GEMCAP LENDING, LLC v. SCOTTSDALE INDEMNITY CO., ET AL. | | |

Ultimately, in September 2014, Crop stipulated to a $12,126,534.61 judgment in the underlying action.[2]  Id. ¶ 26, see GemCap v. Crop, Dkt. 325.  On March 17, 2015, Crop also assigned all of its rights under the Scottsdale policy to GemCap.[3]  FAC ¶ 27.

GemCap, having been assigned Crop's right to initiate an action against Scottsdale, initiated the instant suit on November 24, 2015.  In this suit, GemCap argues that Scottsdale's denial of Crop's tender of a defense was wrongful and constitutes a breach of the Policy between Crop and Scottsdale.  See generally FAC.  GemCap seeks as damages all unreimbursed costs Crop bore defending the underlying lawsuit.  Id. at 9.  In the instant motion to dismiss, as discussed *infra*, Scottsdale maintains that the underlying lawsuit only asserted claims that lay outside the coverage of Crop's professional services liability policy, such that Scottsdale had no duty to defend Crop in the underlying action.  See Motion at 2–3.

### III.  LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id. (internal citations omitted).

---

[2] The district court would later adopt and approve the stipulated judgment on April 12, 2015.

[3] The Court assumes *arguendo*, for the purposes of this order, that this assignment was valid.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-09942-CAS(FFMx) | Date | March 17, 2017 |
| Title | GEMCAP LENDING, LLC v. SCOTTSDALE INDEMNITY CO., ET AL. | | |

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them.  Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials).  In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201.  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted.  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-09942-CAS(FFMx) | Date | March 17, 2017 |
| Title | GEMCAP LENDING, LLC v. SCOTTSDALE INDEMNITY CO., ET AL. | | |

## IV. DISCUSSION

### A. Legal Standard Regarding the Duty to Defend under California Law

In California, an insurer's duty to defend its insured is broad. Pension Trust Fund for Operating Engineers v. Federal Ins. Co., 307 F.3d 944, 949 (9th Cir. 2002). An insured is entitled to a defense "if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy." Montrose Chemical Corp. v. Superior Court, 6 Cal. 4th 287, 299 (1993) (emphasis in original). "The duty to defend is broader than the duty to indemnify, and it may apply even in an action where no damages are ultimately awarded." Scottsdale Ins. Co. v. MV Transp., 36 Cal. 4th 643, 654 (2005). Whether there is a duty to defend turns upon "those facts known by the insurer at the *inception* of a third party lawsuit." Montrose, 6 Cal. 4th at 295 (emphasis added). Thus, "[d]etermination of the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy." Scottsdale Ins. Co., 36 Cal. 4th at 654.

"[T]he duty also exists where extrinsic facts known to the insurer suggest that the claim may be covered." Id.; see also Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 19 (1995) (explaining that the duty to defend exists if the insurer "becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement."). "When determining whether a particular policy provides a potential for coverage and a duty to defend, [courts] are guided by the principle that interpretation of an insurance policy is a question of law." Waller, 11 Cal. 4th at 18. "Moreover, that the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability." Scottsdale Ins. Co., 36 Cal. 4th at 654.

Failure to defend an insured is excused only when "the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." Montrose, 6 Cal. 4th at 300. Accordingly, an insurer who receives tender indicating potential for coverage "cannot 'wait out' discovery before determining its duty to defend; that is precisely why the California Supreme Court requires defense even on the basis of potential coverage." Tower Ins. Co. of New York v. Capurro Enterprises

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:15-cv-09942-CAS(FFMx) | Date | March 17, 2017 |
|---|---|---|---|
| Title | GEMCAP LENDING, LLC v. SCOTTSDALE INDEMNITY CO., ET AL. | | |

Inc., No. C 11-03806 SI, 2011 WL 6294485, at *7 (N.D. Cal. Dec. 15, 2011) (citing Montrose, 6 Cal. 4th at 299)). However, although the duty to defend is "broad, [it] is not unlimited; it is measured by the nature and kinds of risks covered by the policy." Waller, 11 Cal. 4th at 19.

### B.   The Allegations in the Underlying Action

In order to determine whether GemCap has stated a claim for relief here the Court must evaluate whether there was a possibility of a covered claim based on the facts pled in the underlying complaint. The original underlying complaint alleged the following facts: In 2011, Crop's president and prinicpal, R. John Taylor ("Taylor"), approached GemCap seeking a loan. Id. ¶ 30. GemCap provided Crop with a line of credit based on Taylor's representation that Crop's income was paid in intervals, and, therefore, the company needed funds to cover daily operations during intermittent revenue gaps - "in other words, for working capital." Id. The underlying complaint alleged that, in truth, Taylor was overstretched financially and needed money to fund other entities, some unrelated to Crop, as well as his personal debts. Id.

GemCap, in reliance upon Taylor's representations agreed to provide a loan to Crop with a revolving line of credit. Id. ¶ 31. The loan agreement between GemCap and Crop provided that Crop could use the funds "solely" for certain, enumerated purposes. Id. ¶ 33. Use of the funds for other purposes would result in a default. Id. The enumerated purposes included paying for investments in specified companies, repaying debts, payment of fees relating to the loan and Crop's day-to-day working capital needs. Id. ¶ 42. The loan was secured by collateral in the form of a security interest in Crop's future premiums and commissions, plus all other assets. Id. ¶ 34.

In 2012, GemCap discovered that Taylor had impermissibly diverted loan proceeds to Pacific Empire Radio Corporation ("PERC"), a radio station in which Taylor maintained an ownership interest. Id. ¶ 46. To avoid being found in default, Crop agreed to pay a $10,000 fee. Id. With Crop's prior improper diversion of loan funds in mind, GemCap performed an audit of Crop's financial disclosures in April, 2013. Id. GemCap discovered that Crop had provided erroneous Borrowing Certificates and, in reliance upon those certificates, GemCap had extended a "massive overadvance" to Crop. Id. ¶ 47. Specifically, GemCap discovered that, while the federal Risk Management Agency

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:15-cv-09942-CAS(FFMx) | Date | March 17, 2017 |
|---|---|---|---|
| Title | GEMCAP LENDING, LLC v. SCOTTSDALE INDEMNITY CO., ET AL. | | |

("RMA") capped insurance commissions at 62% of administrative and operating expenses, Crop had requested funds based upon a cap of 80%. Id. The overadvance was in excess of $5.7 million. Id. ¶ 48. At the time, GemCap had loaned Crop approximately $12.7 million. Id. ¶ 49. After further investigation, GemCap discovered Taylor had been diverting loan funds to personal expenses, his mortgage, PERC, other businesses in which Taylor had invested, and various other activities "unrelated to Crop's insurance activities." Id. ¶ 50. GemCap sent a notice of default to Crop on July 16, 2013. Id. ¶ 51. The underlying action was filed on July 30, 2013.[4]

### C. Crop's Insurance Policy with Scottsdale

GemCap's claims against Scottsdale are all predicated upon Scottsdale's purported duty to defend Crop in the underlying action. The scope of said duty depends upon the mutual intent of the parties as expressed in the insurance policy issued by Scottsdale to Crop. See PMI Mort. Ins. Co. v. American Intern. Spec. Lines Ins. Co., 394 F.3d 761, 764 (9th Cir. 2005). The parties do not dispute the text of the Policy, which provides, in pertinent part, that Scottsdale shall:

> pay on behalf of the Insured any Damages as a result of a Claim first made against the Insured . . . for a **Wrongful Act** of the Insured . . . . [and that Scottsdale has] the right and duty to defend any Claim to which this insurance applies . . . even if the allegations of the Claim are groundless, false, or fraudulent.

FAC, Ex. A ("Policy") at 6 (emphasis added). In the policy, a "Wrongful Act" is defined as:

---

[4] The underlying second amended complaint added more detail regarding the specific companies for which the loan funds were to be used, Underlying SAC ¶¶ 43–45, alleged in more detail how Taylor impermissibly commingled loan funds between companies not specified in the loan agreement, ¶¶ 45–46, and alleged with greater specificity the extent of GemCap's collateral security interest in various entities related to Crop, ¶¶ 50–55.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-09942-CAS(FFMx) | Date | March 17, 2017 |
| Title | GEMCAP LENDING, LLC v. SCOTTSDALE INDEMNITY CO., ET AL. | | |

> any actual or alleged negligent act, error or omission, including a Personal Injury, *committed solely in the performance or failure to perform* ***Professional Services***.

Id. at 8 (emphasis added). "Professional Services" are defined as:

> Insurance services performed for others for a fee or commission . . . as a . . . general agent . . . including any of the following services: notary, premium financing, claims handling or adjusting, risk management or loss control services.

Id.

### D. GemCap's Claims Against Scottsdale

GemCap argues that it alleged conduct in the underlying action which related to Crop's "professional services," as defined in the Policy. GemCap argues that Crop's accounting methods, or alleged lack thereof, were "professional services" within the meaning of the Policy because Crop's failure to adhere to certain accounting principles adversely affected its business as an insurance agent and its relationship with Diversified, whose policies Crop sold. The underlying complaint alleged facts relating to Crop's submission of incorrect accounting records to GemCap. GemCap appears to argue that because "both the Diversified contract and [Federal Crop Insurance Corporation ("FCIC")] regulations required Crop to keep detailed and accurate accounting records," FAC ¶ 13, any accounting failures at Crop are professional services under the Policy. GemCap is incorrect.

The language of the Policy does not support such a strained reading, nor does GemCap aver that the Policy language is ambiguous. To the extent possible, the mutual intentions of Crop and Scottsdale should be inferred "solely from the written provisions of the [policy] contract." PMI Mort Ins. Co., 394 F.3d at 764. The Policy appears to require Scottsdale to defend Crop against claims predicated upon Crop's negligence in the performance of "[i]nsurance services performed for others for a fee or commission." Preparation and provision of financial documents in a company's loan application are not "insurance services." Nor was Crop accused in the underlying action of providing documents to GemCap "for a fee or commission." Crop provided accounting documents

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-09942-CAS(FFMx) | Date | March 17, 2017 |
| Title | GEMCAP LENDING, LLC v. SCOTTSDALE INDEMNITY CO., ET AL. | | |

to GemCap in the hope of obtaining and retaining a revolving line of credit.  Whereas one might, perform insurance services "for a fee or commission," those words are not normally understood to mean "in a loan application" or "for a loan."  Therefore claims based upon Crop's disclosures to GemCap during loan negotiations do not appear to be "insurance services."  The foregoing interpretation of the phrase "insurance services" is bolstered by the language accompanying the phrase in the Policy.  The Policy describes "insurance services" as including actions normally associated with insurance and insurance sales, namely, "notary, premium financing, claims handling or adjusting, risk management or loss control."  Policy at 8.  The underlying action did not allege negligence in the performance of those activities or any other potential "insurance services."

      GemCap argues that its contract with Diversified required it to abide by certain accounting principles and that GemCap's audit exposed errors in Crop's accounting.  This strained connection between Crop's loan application and insurance business does not place Crop's loan application within the ambit of "insurance services."  Crop's loan application was not "insurance services" as those words would ordinarily be read.  "In construing the terms of a professional liability policy, we look to their ordinary and normal use in that profession."  Inglewood Radiology Med. Grp., Inc. v. Hosp. Shared Servs., Inc., 217 Cal. App. 3d 1366, 1369, 266 Cal. Rptr. 501 (Ct. App. 1989).  GemCap does not aver that "insurance services" has a different meaning in the insurance industry than it ordinarily would, nor does GemCap argue that "insurance services" has a special or ambiguous meaning in the context of the Policy.

      Consistent with the Court's interpretation of the Policy here, "California state courts have uniformly held that insurance policies covering 'professional services' reach only those acts committed by the insured or in his or her capacity as a professional—they do not cover general administrative activities that occur in all types of businesses."  PMI Mort Ins. Co., 394 F.3d at 766; see also General Acc. Ins. Co. v. Namesnik, 790 F.2d 1397, 1400 (9th Cir. 1986) (professional services policy for attorneys does not cover attorney's conduct in soliciting funds from clients, since such conduct did not involve legal services); Blumberg v. Guarantee Ins. Co., 192 Cal.App.3d 1286 (1987) (professional services policy for attorneys does not cover suit between partnered attorneys arising out a partnership dispute).  "The dispositive question is whether the alleged injuries occurred during the performance of professional services."  PMI Mort Ins. Co.,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-09942-CAS(FFMx) | Date | March 17, 2017 |
| Title | GEMCAP LENDING, LLC v. SCOTTSDALE INDEMNITY CO., ET AL. | | |

394 F.3d at 767 (citing Tradewinds Escrow, Inc. v. Truck Ins. Exch., 92 Cal.App.4th 704 (2002)).

In this respect Inglewood Radiology Med. Grp, Inc. v. Hospital Shared Services, Inc., is instructive. 217 Cal.App.3d 1366 (1989). In Inglewood Radiology, a medical group carried insurance covering liability arising from the rendering of "professional services," defined as those "services performed in the practice of a physician, surgeon or dentist." Id. at 1368. When the medical group was sued by a former employee-physician for wrongful termination, the insurer refused to defend the action as being outside the policy. Id. When the insured medical group brought suit, the court found that a "business or administrative decision" cannot be considered the rendering of the doctor's "professional service." Id. at 1370. The medical group advanced a similar argument to GemCap's here. The insured medical group argued that "only a trained physician, in exercising the physician's expertise, could determine to fire a physician employee." Id.

Here, by analogy, GemCap argues that only an insurance agent like Crop uses certain accounting practices and that Crop's alleged negligence in the underlying action was in its accounting disclosures to GemCap. The Inglewood Radiology court rejected the medical group's argument, reasoning that, where a managing-physician terminates an employee, the decision is in that manager's capacity as an employer. Id. The manager is not "rendering professional services" as those terms are ordinarily understood, even if the decision related to their respective medical knowledge. Id. Similarly, here, Crop's provision of financial disclosures to GemCap were not "insurance services" despite potentially relating to Crop's insurance related accounting methods - Crop was accused in the underlying action of erroneous disclosures during a business and administrative decision unconnected to the provision of insurance services. Accordingly, the underlying complaint did not implicate Scottsdale's duty to defend Crop in the underlying action. The facts alleged were not potentially within the scope of the Policy.

However, the analysis does not end with a comparison of the Policy and the facts alleged in the underlying complaint. Scottsdale was required to consider any available extrinsic facts in determining whether any covered claim was possible in the underlying action. Montrose, 6 Cal.4th at 296. GemCap makes repeated mention of this aspect of California law, but does not allege in the complaint or its opposition to this motion that Scottsdale had any *specific* extrinsic information which should have affected Scottsdale's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-09942-CAS(FFMx) | Date | March 17, 2017 |
| Title | GEMCAP LENDING, LLC v. SCOTTSDALE INDEMNITY CO., ET AL. | | |

duty to defend. Instead, the FAC summarily asserts that the underlying "complaint, [and] available extrinsic evidence and inferences" gave rise to Scottsdale's duty to defend without distinguishing between the two sources of information. FAC ¶ 34.

"An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." Gunderson v. Fire Ins. Exchange, 37 Cal.App.4th 1106, 1114 (1995). GemCap is correct in its assertion that an insurer's duty to defend is often broader than its duty to indemnify. Horace Mann, 4 Cal.4th at 1081. However, it is not limitless. An insurer is not required to defend against claims which do not raise any possibility of coverage. In this case, the Policy did not extend to the underlying action. GemCap's claims, all of which are premised upon Scottsdale's failure to perform its duty to defend, therefore must be **DISMISSED**.

It is difficult to discern how plaintiff might cure the foregoing deficiency insofar as plaintiff's claims appear to be limited by the allegations in the underlying complaint and language of the Policy. However, plaintiff has requested leave to amend the FAC, should it be dismissed. Plaintiff may yet be aware of extrinsic information affecting Scottsdale's purported duty to defend or may be able to allege facts supporting a different interpretation of "insurance services" in the Policy. Accordingly, plaintiff will be permitted 21 days leave in which to file an amended pleading.

## V.    CONCLUSION

The FAC is **DISMISSED without prejudice**. Plaintiff is granted **21 days leave** in which to amend the complaint.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |